IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 13, 2009

STATE OF TENNESSEE v. GEORGE ANTHONY BRADDOCK

Appeal from the Circuit Court for Houston County
No. 4736     Larry J. Wallace, Judge

No.  M2008-00647-CCA-R3-CD - Filed May 12, 2009

Appellant, George Anthony Braddock, was indicted for first degree premeditated murder for the death of his wife.  Appellant was found guilty by a jury and sentenced to life in prison.  On appeal, Appellant challenges the sufficiency of the evidence.  We determine that the evidence is sufficient to support a conviction for first degree murder.  Accordingly, the judgment of the trial court is affirmed.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

William B. "Jake" Lockert, III, District Public Defender, for the Appellant George Anthony Braddock..

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Dan Alsobrooks, District Attorney General, and Suzanne Lockert, Assistant District Attorney General, for the appellee, State of Tennessee.

OPINION

Appellant and the victim, Marie Braddock, were husband and wife.  In the fall of 2004, the couple and their two children were living in Houston County, Tennessee in a home owned by the victim's father.  Mrs. Braddock was the primary wage earner in the family.  At that time, she was working at the Southern Aire Restaurant in Houston County.  Appellant worked off and on, performing mostly odd jobs.

While working at Southern Aire, Mrs. Braddock became close friends with another employee, Adam Powell.  The friendship eventually developed into an extramarital affair.  Mrs.

Braddock often stayed late at work at the restaurant, spending time with Mr. Powell. Additionally, the two went on several out of town trips together.

After some time, Appellant began to suspect that there was something going on between his wife and Mr. Powell. Appellant personally witnessed Mrs. Braddock and Mr. Powell hanging out at the restaurant together after hours and drinking together at Mr. Powell's residence.

Mrs. Braddock eventually quit her job at the restaurant after Appellant told her not to spend any more time with Mr. Powell. Mrs. Braddock's mother, Dorothy Hadley, provided money to support the couple after Mrs. Braddock quit her job. In fact, Mrs. Hadley sold a rifle to Mr. Powell in order to provide money to Mrs. Braddock and Appellant. Appellant was angered when he found out that Mr. Powell brought the rifle, vowing to have his own pistol back into the house by the next weekend.

Mrs. Braddock continued her relationship with Mr. Powell after quitting her job. However, Mrs. Braddock told Mr. Powell that she wanted to stay in her marriage. Mr. Powell "wanted the truth of the matter," so he went to the Braddock residence to discuss the matter with Appellant. The two men got into an argument during which Mr. Powell sprayed Appellant with pepper spray. Mr. Powell claimed that he sprayed Appellant because he was afraid that Appellant was armed.

The weekend before Mrs. Braddock was murdered, her sister Kimberly Tolley came to visit from Carroll County. The Saturday before her death, Mrs. Braddock played cards with her father, sister, brother-in-law, cousin, and children at her father's home. Mrs. Braddock and her sister walked to a nearby store to buy beer. Mr. Powell's uncle was at the store and purchased a beer for the victim. Appellant was upset when he learned who bought the victim the beer. Later that evening, Appellant and the victim rode in their car with the victim's sister to a boat dock at a nearby lake. Appellant and the victim were arguing. Appellant started driving very recklessly as the two argued. Appellant only stopped when Mrs. Tolley and Mrs. Braddock were upset and crying. When they got back to Mrs. Braddock's father's house, Appellant went home, and Mrs. Braddock and Ms. Tolley went to visit Mr. Powell.

Sunday morning, Appellant called his mother, Edith Braddock, to tell her that his children wanted to come stay with her at her house. Appellant's mother arrived that afternoon and left with the grandchildren after approximately one hour.

That afternoon, Appellant, Mrs. Braddock, and the victim's cousin, Philip Stewart, watched a movie together. Appellant repeatedly asked the victim if she wanted to go for a ride so that they could talk. Mr. Stewart thought that this was odd behavior, as Appellant rarely left the house.

Mr. Stewart fell asleep during the movie. Appellant and Mrs. Braddock left the house. Appellant retrieved his pistol from the bedroom and placed it in the waistband of his pants before they left in the car. Appellant and Mrs. Braddock drove to a boat dock first then drove to a remote swimming area on a nearby creek. As they sat in the car, Appellant asked Mrs. Braddock about her

relationship with Mr. Powell. Appellant claimed that he was trying to get Mrs. Braddock in a "romantic mood," but continued to question her about her relationship with Mr. Powell. At some point, Appellant and Mrs. Braddock got out of the car. Appellant took out his pistol, placed a bullet in the chamber, and put the gun to his head when Mrs. Braddock would not answer his questions about Mr. Powell. Appellant claimed at trial that Mrs. Braddock was about twenty feet away from him at the time and that it was dark. Appellant stated that he could make out her figure from that distance. Appellant told Mrs. Braddock that he was going to kill himself. Mrs. Braddock started to walk toward him but stopped when she was about eight or nine feet away. According to Appellant's testimony at trial, Mrs. Braddock told him to "go ahead, now she and the kids could be with Adam Powell." Appellant testified that he merely "reacted" and "fired the gun in that direction." While on the stand, Appellant testified that he did not know where he shot the victim, did not feel for a pulse, and ran to the car.

Immediately after the shooting, Appellant left the area and took Mrs. Braddock's car to an airport where he left it behind an outbuilding. Appellant walked home. Mr. Stewart was still at the residence. Appellant asked Mr. Stewart if he had seen the victim. Appellant told Mr. Stewart to "tell [Mrs. Braddock] to keep her ass here" if he saw her. Appellant got a duffel bag that was already packed with clothing. He put a carton of cigarettes in the bag and loaded the bag and some speakers into the car before taking off. Appellant drove to his mother's house in Covington, Tennessee arriving there sometime in the middle of the night.

On Monday, October 11, Appellant called the Houston County Sheriff's Department. Appellant used a fake name and told Deputy Jason Laxton that he needed to look for something along the creek bank. The majority of the telephone call was taped. Deputy Laxton recognized Appellant's voice during the conversation. Later during the call, Appellant admitted that he shot his wife in the head and left her body on the creek bank.

Appellant called the sheriff's department a second time, from a pay phone in Tipton County. The authorities traced the call, and Appellant was arrested after a brief pursuit. Appellant later told authorities that he threw his weapon out of the window of the car during the pursuit. Appellant was later indicted by the Houston County Grand Jury for first degree murder.

Agent Derek Jones of the Tennessee Bureau of Investigation ("TBI") responded to the creek bank. Mrs. Braddock was found lying on the creek bank with a single gunshot wound to the right side of her head. The victim was holding a pack of cigarettes in her right hand and a single shell casing was found near the body. Donna McWhorter, a person that lived near the area of the creek, stated that around 6:00 p.m she and her husband heard a single gunshot and had seen a vehicle in the area which matched the description of the victim's vehicle.

Dr. Thomas Deering, the assistant medical examiner, testified at trial. According to Dr. Deering, the victim had soot and gun powder stipple around the gunshot wound in her right temple. This indicated that the weapon was fired from approximately six inches away.

At trial, Appellant claimed that he only took the pistol to the creek to threaten his own life, not to kill Mrs. Braddock. Appellant hid the pistol in the waistband of his pants when the two left the house because if Mrs. Braddock decided that she wanted to be with Mr. Powell, Appellant was going to "shoot" himself. He had threatened his own life several times and never had any intentions of hurting Mrs. Braddock. Appellant also claimed that he always kept a bag of clothing packed because he frequently went to his mother's house.

At the conclusion of the jury trial, Appellant was found guilty of first degree murder. As a result, the trial court sentenced him to life in prison. After the denial of a motion for new trial, Appellant filed a timely notice of appeal. On appeal, Appellant argues that the evidence was not sufficient to support a conviction for first degree murder and that the trial court erred in allowing Deputy Laxton to testify that Appellant's "main concern appeared to be avoiding going to the penitentiary."[1]

*Analysis*

Appellant claims on appeal that the evidence is insufficient to establish premeditation. Specifically, Appellant claims that the evidence did not show that he engaged in planning prior to the killing and had no plans to conceal the killing. Appellant claims that the "killing was done in an instant in a burst of many overwhelming emotions including rage." The State, on the other hand, argues that Appellant "procured a weapon, used that weapon on an unarmed victim, made preparations before the killing for the purpose of concealing the crime, and was calm immediately following the killing," all of which support a conviction for first degree murder.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reevaluating the evidence when considering the convicting proof. *State v. Morgan*,

---

[1]Although Appellant lists "Whether the trial court erred in allowing Deputy Jason Laxton to testify as to his opinion that the Defendant's main concern appeared to be avoiding going to the penitentiary" as an issue in his brief, we are unable to find any reference to this issue in the argument section of his brief. Accordingly, we will not address this issue in our analysis.

929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

First degree murder is described as:

(1) A premeditated and intentional killing of another;
(2) A killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, act of terrorism, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy; or . . . .

T.C.A. § 39-13-202(a). Tennessee Code Annotated section 39-13-202(d) provides that:

"[P]remeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

T.C.A. § 39-13-202(d). An intentional act requires that the person have the desire to engage in the conduct or cause the result. *Id.* § 39-11-106(a)(18). Whether the evidence was sufficient depends entirely on whether the State was able to establish beyond a reasonable doubt the element of premeditation. *See State v. Sims*, 45 S.W.3d 1, 7 (Tenn. 2001); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999). Whether premeditation is present is a question of fact for the jury, and it may be inferred from the circumstances surrounding the killing. *State v. Young*, 196 S.W.3d 85, 108 (Tenn. 2006); *see also State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000); *State v. Pike*, 978 S.W.2d 904, 914 (Tenn. 1998).

Premeditation may be proved by circumstantial evidence. *See, e.g., State v. Brown*, 836 S.W.2d 530, 541-42 (Tenn. 1992). Our high court has identified a number of circumstances from which the jury may infer premeditation: (1) the use of a deadly weapon upon an unarmed victim; (2) the particular cruelty of the killing; (3) the defendant's threats or declarations of intent to kill; (4) the defendant's procurement of a weapon; (5) any preparations to conceal the crime undertaken before the crime is committed; (6) destruction or secretion of evidence of the killing; and (7) a defendant's calmness immediately after the killing. *See State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997); *Pike*, 978 S.W.2d at 914-15. This list, however, is not exhaustive and serves only to demonstrate that premeditation may be established by any evidence from which the jury may infer that the killing was

done "after the exercise of reflection and judgment." T.C.A. § 39-13-202(d); *see Pike*, 978 S.W.2d at 914-15; *Bland*, 958 S.W.2d at 660.

One learned treatise states that premeditation may be inferred from events that occur before and at the time of the killing:

> Three categories of evidence are important for [the] purpose [of inferring premeditation]: (1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is, *planning activity*; (2) facts about the defendant's prior relationship and conduct with the victim from which *motive* may be inferred; and (3) facts about the *nature of the killing* from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design.

2 Wayne R. LaFave, *Substantive Criminal Law* § 14.7(a) (2d ed. 2003) (emphasis in original).

The proof at trial established that Appellant was angry and upset about his wife's affair with Mr. Powell. Appellant secured his pistol and encouraged his wife to go with him to a secluded area to talk. Prior to the trip, Appellant sent his children to stay with their grandmother and packed a bag. When Appellant and Mrs. Braddock left in her vehicle, Appellant concealed the pistol in the waistband of his pants and covered it with his shirt. The evidence showed that the victim was shot in the right temple at a distance of approximately six inches away. Appellant left the victim lying on the creek bank and disposed of her car before walking home. When Appellant returned to his house, he inquired about Mrs. Braddock's wherabouts, put his suitcase into his car and fled, appearing to be "in a big hurry to get gone." Appellant drove to his mother's house in Covington. Appellant does not dispute that he shot and killed his wife, only that the evidence did not support premeditation. He claimed at trial that he reacted to the victim's statement by shooting her from a distance. The credibility of the witnesses is, as stated previously, a matter entrusted to the jury. *Pruett*, 788 S.W.2d at 561. The jury clearly did not find Appellant to be a credible witness. After a review of the evidence, we conclude that any rational juror could have found that Appellant killed his wife according to a preconceived plan to do so. Therefore, the evidence is more than sufficient to support a verdict of guilty of first degree murder. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE